2020 IL App (1st) 201356-U
Order filed: December 23, 2021

FIRST DISTRICT
FOURTH DIVISION

No. 1-20-1356

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| DEBRA WRIGHT, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CH 00676 |
| | ) | |
| CHICAGO HOUSING AUTHORITY, | ) | Honorable |
| | ) | David B. Atkins, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lampkin and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirmed the Chicago Housing Authority's termination of plaintiff's subsidized housing voucher after an informal administrative hearing, finding that plaintiff's right to procedural due process was not violated during the hearing and that the decision to terminate the voucher was not clearly erroneous.

¶ 2    Plaintiff, Debra Wright, appeals the order of the circuit court affirming the decision of the Chicago Housing Authority (CHA) to terminate the subsidized housing voucher she was receiving under the Section 8 housing choice voucher program (HCV program). We affirm.

¶ 3    The United States Department of Housing and Urban Development (HUD) runs the HCV program, whereby HUD provides rental subsidies (*i.e.*, vouchers) for low-income individuals. 24 C.F.R. § 982.1(a)(2013). Local public housing authorities, such as the CHA, administer the

program pursuant to HUD regulations. *Id.* §§ 982.51-982.54. The HUD regulations state the obligations of a participant family under the program (family obligations), including that "[t]he members of the household may not engage in drug-related criminal activity or violent criminal activity or other criminal activity that threatens the health, safety, or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises." *Id.* § 982.551(l). The HUD regulations provide that the local public housing authority "may at any time deny program assistance for an applicant, or terminate program assistance for a participant, *** [i[f the family violates any family obligations under the program." *Id.* § 982.552(c)(1)(i). "Family" is defined as a single person or a "group of persons residing together." *Id.* § 5.403.

¶ 4        The HUD regulations state that "[t]he requirements" of section 982, which provide for the family obligations that must be complied with as a condition for participating in the HCV program, also "apply to a guest." *Id.* § 5.100. "Guest" is defined as "a person temporarily staying in the unit with the consent of a tenant or other member of the household who has express or implied authority to so consent on behalf of the tenant." *Id.*

¶ 5        The HUD regulations further require that the local public housing authorities "must adopt a written administrative plan that establishes local policies for administration of the program in accordance with HUD requirements." *Id.* § 982.54(a). Pursuant thereto, the CHA adopted a plan for administering the HCV program (the CHA administrative plan). Chapter 12-I.D of the CHA administrative plan provides for the family obligations as follows:

>    "When the family's unit is approved and the Housing Assistance Payment (HAP) contract is executed, the family must follow the rules listed below in order to continue participating in the housing choice voucher program.

The CHA may terminate a family's assistance if the family has failed to comply with any family obligations under the program listed below, even if not required to do so by HUD. Any information the family supplies must be true and complete.

The family must:

\* \* \*

8. Use the assisted unit for residence only by the family that is listed on the HAP contract and the lease. The unit must be the family's only residence.

\* \* \*

10. Request CHA's written approval to add any other family member as an occupant of the unit.

\* \* \*

19. Follow the CHA's policy regarding guests. A guest is defined as a person temporarily staying in the unit with the consent of the head of household or other adult member. See 24 CFR 5.100. A guest may visit a family in an assisted unit for a total of 30 calendar days in a calendar year; however, each visit cannot exceed seven consecutive calendar days. A visit is defined as an overnight stay. Participants may request a time extension to this visitor timeframe. Persons that exceed the time as a guest will be considered an unauthorized occupant and the family will be subject to program termination." See CHA administrative plan, ch. 12-I.D at 12-1 to 12-3 (2021) ([https://cha-assets.s3.us-east-2.amazonaws.com/s3fs-public/2021-01/Admin_Plan-Clean.pdf](https://cha-assets.s3.us-east-2.amazonaws.com/s3fs-public/2021-01/Admin_Plan-Clean.pdf)).

¶ 6    Chapter 12-I.D further provides that:

"The family (including each family member) must not:

\* \* \*

6. Engage in, or allow guests to engage in, violent criminal activity. ***

7. Engage in, or allow guests to engage in, other criminal activity that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises. Immediate vicinity means within a one mile radius of the premises. See 24 CFR 5.100.

* * *

15. Possess or use a firearm or aggravated assault weapon in violation of federal, state or local criminal or civil laws. This obligation applies to any household member and/or their guests while on the property or within the immediate vicinity of the property." *Id.* at 12-3 to 12-4.

¶ 7     On September 13, 2013, plaintiff entered into a lease for a subsidized unit at 1239 S. Kedvale Avenue in Chicago (the Kedvale unit). Five people were listed as members of the family household who were authorized occupants of the unit: plaintiff and her four children, Walker, Angalwon Gilmore, C.Y.J. (a minor) and I.N.W. (a minor). The CHA provided plaintiff with a voucher and entered into a HAP contract with the Kedvale unit's landlord, in which the CHA agreed to subsidize plaintiff's rent through the HCV program. Plaintiff signed the voucher which set forth the family obligations, including that the family must not "[e]ngage in drug-related criminal activity or violent criminal activity or other criminal activity that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises." Plaintiff also signed an addendum to the family obligations that contained the same language as in the CHA administrative plan, setting forth the family's responsibility to use the Kedvale unit for residence only by the family that is listed on the HAP contract and lease and to comply with the CHA's policy regarding guests. The addendum provided

that a person who exceeds the time as a guest will be considered an unauthorized occupant and the family will be subject to program termination.

¶ 8    On September 3, 2016, plaintiff signed and submitted to the CHA an application for continued eligibility to remain in the HCV program. In the application, plaintiff listed herself, Angalwon, C.Y.J. and I.N.W. as household family members but crossed out Walker's name and wrote that he had been "removed from household." On October 7, 2016, plaintiff signed an "out of household declaration," which is a form used to inform the CHA of household family members moving out of the unit, stating that Walker no longer resided in her family household and that his move-out date was September 16, 2016. Plaintiff stated that she did not know Walker's new address.

¶ 9    On December 19, 2016, the CHA amended the HAP contract to reflect that Walker had moved out on September 16, 2016, and that he was no longer an authorized household family member allowed to occupy the Kedvale unit.

¶ 10    In January 2017, the CHA learned that on December 11, 2016, a search warrant was executed at the Kedvale unit, and that during the search, weapons were recovered from inside the unit that allegedly belonged to Walker, who was arrested.

¶ 11    On January 18, 2017, the CHA issued an intent to terminate (ITT) notice to plaintiff, informing her that it was proposing termination of her participation in the HCV program based on the violation of several family obligations related to Walker's arrest for possessing illegal weapons inside the Kedvale unit. Specifically, the ITT stated that, in violation of the family obligations, Walker was an unauthorized occupant of the unit at the time of his arrest and that his possession of illegal weapons violated the criminal laws and threatened the health, safety or right to peaceful

enjoyment of other residents and persons residing in the immediate vicinity of the premises. The ITT also informed plaintiff of her right to an informal hearing.

¶ 12    Plaintiff filed a request for an informal hearing on January 23, 2017, pursuant to chapter 16-III.A of the CHA administrative plan, which provides for informal review of a decision denying or withdrawing a voucher. Chapter 16-III.B provides the informal hearing procedures and states in pertinent part:

> "The CHA and the family must be given the opportunity to present evidence and question any witnesses. In general, all evidence is admissible at an informal hearing. Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings.

> Hearsay evidence will be admissible at informal hearings; however, hearsay evidence alone cannot be used as the sole basis for the hearing officer's decision.

> The CHA will use the concept of the preponderance of the evidence as the standard for making all informal hearing decisions. *Preponderance of the evidence* is defined as evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." (Emphasis in the original.) *Id.*, ch. 16-III.B at 16-6 to 16-7.

¶ 13    At the informal hearing, the CHA introduced into evidence the police officers' case incident report about Walker's arrest. The case incident report listed Walker's address as the Kedvale unit, and stated that multiple officers, whose names were redacted in the report, executed a search warrant at that location at 5:29 a.m. on December 11, 2016. The report further stated that officers knocked on the door and announced their office. After waiting a "reasonable amount of

time with no response," the officers breached the door, gained entry, and secured six occupants. The officers conducted a "systematic search" of the premises and recovered a rifle with a high capacity magazine "from the rafters in the basement." They recovered a black canvas bag from under the stairs leading to the basement, which contained a 9 mm semi-automatic weapon with a high capacity magazine as well as live ammunition and gun cleaning supplies. They also recovered (from an unidentified location within the residence) a third weapon, a .22 caliber gun. The case incident report stated that the weapons and ammunition were all owned by Walker.

¶ 14    The CHA also introduced into evidence Exhibit 21, the certified statement of conviction/disposition in *People v. Walker*, case number 17CR0342801. Exhibit 21 showed that Walker was charged with one count of unlawful use of weapons for knowingly possessing a rifle having one or more barrels less than 16 inches in length or a shotgun having one or more barrels less than 18 inches in length. 720 ILCS 5/24-1(a)(7)(ii) (West 2016). Walker was also charged with three counts of unlawful possession of a firearm without a valid firearm owners identification (FOID) card. 430 ILCS 65/2(a)(1) (West 2016). Walker pleaded guilty to unlawful use of weapons on July 6, 2017, and was sentenced to 54 months in prison, consecutive to the sentence imposed in case number 16CR1602001.

¶ 15    The CHA introduced into evidence Exhibit 22, the certified statement of conviction/disposition in *People v Walker*, case number 16CR1602001. Exhibit 22 showed that Walker was charged with two narcotics offenses, possession of a controlled substance (720 ILCS 570/402 (West 2016)) and manufacture or delivery, or possession with intent to manufacture or deliver a controlled substance (720 ILCS 570/401 (West 2016)). Walker pleaded guilty on July 6, 2017, to possession of a controlled substance and was sentenced to one year in prison to run consecutive to the sentence imposed in case number 17CR0342801.

¶ 16    The CHA called Erica Nickelson as its only witness. Nickelson is a housing specialist employed by Nan McKay and Associates, a third-party vendor that helps the CHA administer the HCV program. Nickelson testified that she was familiar with plaintiff's file, although she never actually spoke with plaintiff, Walker, or the police officers who conducted the search, nor did she have any "personal knowledge" about what happened during the search.

¶ 17    Nickelson identified several exhibits that were admitted into evidence, including: the lease that plaintiff entered into for the Kedvale unit; plaintiff's signed voucher; the HCV program addendum to the family obligations; the HAP contract which the CHA entered into with the Kedvale unit's landlord to provide rental assistance for plaintiff pursuant to the HCV program; plaintiff's September 3, 2016, application for continued eligibility to remain in the HCV program in which she crossed out Walker's name from the list of household family members and stated that he had been removed from the household; and plaintiff's October 7, 2016, out of household declaration stating that Walker had moved out of the unit on September 16, 2016.

¶ 18    Nickelson testified that when plaintiff and her family were admitted into the HCV program, they were briefed about the family obligations that were listed on the voucher and the addendum. Relevant to the current matter, the family obligations required that: plaintiff use the Kedvale unit only for family members listed on the HAP contract and lease and that she must receive written approval from the CHA prior to adding any other family members to her unit; that plaintiff must comply with the CHA's guest policy and that if a guest makes overnight visits for more than 7 consecutive calendar days or more than a total of 30 calendar days in a calendar year, he is an unauthorized occupant and the family will be subject to program termination; and that plaintiff's family members and guests may not engage in any criminal activity that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of

the premises and cannot possess or use a firearm or aggravated assault weapon in violation of criminal or civil laws.

¶ 19    Nickelson testified that the CHA sought to terminate plaintiff's voucher because Walker violated the guest policy time-frame and thus was an unauthorized occupant of the Kedvale unit on December 11, 2016, and because he was arrested on that date for possessing firearms in the unit. When asked what specific evidence the CHA relied on in determining that Walker had violated the guest policy, Nickelson testified, "The guest policy, nothing."

¶ 20    Nickelson testified that the CHA uses two electronic databases to store information related to each participant in the HCV program. The iFile database stores all documents received from or sent to a participant and the Yardi database contains brief, chronological log entries memorializing all contacts and interactions with a participant. The log entries in the Yardi database are made by CHA personnel in the regular course of CHA's business activities and are entered at or near the time of the contact with the participant.

¶ 21    Nickelson identified Exhibit 23 as the printout of all the CHA's log entries about its contacts and interactions with plaintiff contained in the Yardi database. The CHA's log entry for December 14, 2016, stated: "Removed Amos Walker from household." The log entry for January 18, 2017, stated: "ITT issued 1/18/2017 for HCV family obligations violations. Search warrant executed at subsidized unit. Illegal weapons recovered. Unauthorized occupant (former [household member] Amos Walker) arrested at HCV unit."

¶ 22    Plaintiff testified on her own behalf and stated that she and four of her children, Walker, Angalwon, C.Y.J. and I.N.W. moved into the Kedvale unit in September 2013 and all of them were listed in the lease as household family members who were authorized occupants of the unit. Plaintiff asked Walker to move out of her unit "around September, October" of 2016 because he

constantly got into trouble at school and with the police. After moving out, Walker made two or three overnight visits to her unit. However, Walker also came over to her unit several times "unwanted." Plaintiff testified that "[s]everal times I had to have him removed by the PD. I had called my brother several times to have him removed."

¶ 23    Plaintiff testified that on December 11, 2016, she got off work, came home to the Kedvale unit, took a shower, and went to bed. She did not then know that Walker was in her home. At about 6 a.m., plaintiff was woken up by "some bangs at the door." She came downstairs and saw that police officers had entered. The officers began to search the unit. Plaintiff testified that Walker and his girlfriend were present inside the unit during the execution of the search warrant.

¶ 24    The officers did not show plaintiff the guns they recovered from the unit. Prior to the search, she had never seen any guns in her home. Plaintiff testified that Walker was the most likely person to have brought over the guns because he was "the only child I have problems with like with street stuff." When asked how Walker had gotten into the Kedvale unit on December 11, plaintiff testified that her son Angalwon, who has a learning disability, "had to let him in."

¶ 25    Plaintiff testified that she, Angalwon, C.Y.J. and I.N.W. currently live at 727 West 50th Place in Chicago. Plaintiff did not inform Walker of her current address and he does not know that they are living there.

¶ 26    Plaintiff testified that in May 2016 she was in a car "with the wrong person at the wrong time" and was shot four times in her buttocks and twice in her right leg and the car crashed, and that as a result she continues to have pain in the leg that prevents her from standing or walking for any extended period of time. Plaintiff introduced medical records showing the treatment that she received for the injuries from the gunshot and the car accident. Plaintiff also presented evidence of Angalwon's learning disability; certificates and job training plaintiff has received to improve

her economic prospects; and supportive letters from plaintiff's social worker, former property manager, and friends and family.

¶ 27    On November 26, 2019, the hearing officer entered an order upholding the termination of plaintiff's voucher, finding that the CHA had proven by a preponderance of the evidence that Walker was an unauthorized occupant of the Kedvale unit on December 11, 2016, and that he was arrested on that date for possession of firearms, all of which violated the family obligations. In support of her findings, the hearing officer noted the CHA administrative plan, which requires that the unit may only be used for residence by the family listed on the HAP contract and the lease. Walker was originally listed on the HAP contract and lease entered into by plaintiff in 2013 as an authorized family member who could occupy the Kedvale unit, but the evidence presented at the hearing showed that he was no longer an authorized occupant after September 2016. Such evidence included: the application for continued eligibility, signed by plaintiff on September 3, 2016, listing only herself, Angalwon, C.Y.J. and I.N.W. as household members and crossing out Walker's name and writing that he had been "removed from household"; plaintiff's October 7, 2016, out of household declaration, stating that Walker no longer resided in her household and that he had moved out on September 16, 2016; and the December 19, 2016, amended HAP contract reflecting that Walker moved out on September 16, 2016, and was no longer an authorized household family member allowed to occupy the Kedvale unit.

¶ 28    The hearing officer found that although Walker was no longer an authorized household family member after September 2016, plaintiff's testimony that she actually removed Walker from the Kedvale unit was "not credible." The hearing officer pointed out that plaintiff gave conflicting dates as to when she removed Walker and gave "confusing" testimony regarding whether Walker's visits to the Kedvale unit after his alleged removal were wanted or unwanted; plaintiff testified

that on two or three occasions she welcomed Walker for overnight visits, but on other occasions his visits were "unwanted" and she asked either the police or her brother to remove him. Plaintiff offered no police reports or corroborative testimony that she ever had Walker removed from the Kedvale unit and the hearing officer found that plaintiff's testimony that she was unaware that Walker was inside the unit when she came home and went to bed on December 11, 2016, was "convenient at best."

¶ 29    The hearing officer also considered the case incident report, which listed Walker's residence on December 11, 2016, as the Kedvale unit and stated that acting on a search warrant, police officers entered the unit at about 5:29 a.m. on that date, secured six persons including Walker, and recovered multiple weapons, live ammunition, and gun cleaning supplies from inside the unit belonging to Walker. The hearing officer found that the case incident report supported a finding that in violation of the family obligations, Walker was an unauthorized occupant of the Kedvale unit on December 11, 2016, who was in possession of firearms. The hearing officer expressly noted plaintiff's argument that the case incident report was hearsay as it contained statements from outside the hearing that were used to prove the truth of the matter asserted, specifically, that Walker was residing in the unit at the time of his arrest (see the definition of hearsay contained in *Miles v. Housing Authority of Cook County*, 2015 IL App (1st) 141292, ¶ 33) and that the case incident report should not have been admitted into evidence where it was uncorroborated. See CHA administrative plan, chapter 12-I.D at 12-1 to 12-3 (providing that hearsay evidence may be admitted and considered as long as it is not the sole basis for the hearing officer's decision). However, the hearing officer found that the case incident report "does not stand alone," as it was corroborated in part by plaintiff's admission that Walker was present inside the

Kedvale unit on the morning of December 11, 2016, while the police officers were executing the search warrant.

¶ 30    In addition, the hearing officer found that the case incident report's account of Walker's arrest on December 11, 2016, for firearms possession was corroborated by the certified statement of conviction in case number 17CR0342801, which showed that Walker pleaded guilty to possessing one of the types of weapons recovered from the Kedvale unit. The hearing officer also found that the case incident report's statement that Walker was occupying the Kedvale unit at the time of his arrest[1] was corroborated by the CHA's December 14, 2016, entry in the Yardi data base, which stated that Walker was not removed from plaintiff's household until three days *after* his December 11 arrest. Given that the case incident report was corroborated by other evidence and was not the sole basis for her decision, the hearing officer rejected plaintiff's claim that she had erred in admitting it into evidence.

¶ 31    The hearing officer concluded that all the evidence, including not only the case incident report, but also the certified statement of conviction in case number 17CR0342801, the CHA's December 14, 2016, entry in the Yardi database, and plaintiff's testimony regarding Walker's presence during the execution of the search warrant, showed that Walker was an unauthorized occupant of the Kedvale unit who was in possession of firearms on December 11, 2016, in violation of the family obligations. The hearing officer terminated plaintiff's voucher, ending her participation in the HCV program.

---

[1]The December 14, 2016, entry in the Yardi data base stating that Walker was removed from plaintiff's household on that day would seem to conflict with the December 19, 2016, amendment to the HAP contract, which stated that Walker moved out of the Kedvale unit three months earlier on September 16, 2016. The hearing officer appears to have resolved the conflict by finding that the CHA's entry in the Yardi database more accurately reflected the timing of Walker's removal.

¶ 32    The hearing officer found that her conclusion would not change even if Walker was considered a guest of plaintiff's household as opposed to an unauthorized occupant. In support, the hearing officer cited chapter 12-I.D of the CHA administrative plan, which states that the prohibition against possession or use of a firearm "applies to any household member *and/or their guests* while on the property or within the immediate vicinity of the property." (Emphasis added.) CHA administrative plan, ch. 12-I.D, at 12-4.

¶ 33    Plaintiff filed a petition for judicial review by a common law writ of *certiorari*. The circuit court affirmed the hearing officer's decision terminating plaintiff's voucher. Plaintiff appeals the circuit court's order.

¶ 34    The CHA operates under the Housing Authorities Act (310 ILCS 10/1 *et seq*. (West 2020)), which did not adopt the Administrative Review Law (735 ILCS 5/3-101 *et seq*. (West 2020)). When the administrative agency's enabling statute does not adopt the Administrative Review Law, the common-law writ of *certiorari* is used to obtain circuit court review of the agency decision as was done in this case. *Landers v. Chicago Housing Authority*, 404 Ill. App. 3d 568, 571 (2010). However, we treat this appeal as we would any other appeal for administrative review. *Id.* In administrative review cases, we review the decision of the administrative agency, not the determination of the circuit court. *Id*.

¶ 35    Plaintiff argues on appeal that the hearing officer violated her right to procedural due process at the informal hearing by relying solely on hearsay evidence, specifically, the case incident report, to conclude that Walker never truly left the Kedvale unit and was living there as an unauthorized occupant in violation of the family obligations on the date of his December 11, 2016, arrest for firearms possession. Plaintiff contends that without the hearsay contained in the case incident report, the remaining evidence indicated that Walker was merely an overnight guest

on December 11 instead of an unauthorized occupant and that the CHA cannot terminate her voucher because of the criminal activity of her guest, including the possession of a firearm. In support, plaintiff cites 24 C.F.R. § 982.551 and § 982.552 (2013), which, she claims, excludes all "guests" from the definition of persons whose criminal activity may result in the termination of a voucher[2].

¶ 36    In other words, plaintiff does not dispute that Walker was found inside the Kedvale unit in criminal possession of firearms on December 11, 2016. However, she argues that without the hearsay statements contained in the case incident report (which were improperly considered by the hearing officer in violation of her right to procedural due process) there was no other evidence supporting the hearing officer's finding that Walker was an unauthorized occupant of the unit instead of merely an overnight guest. Plaintiff contends that, as an overnight guest, Walker's presence in the unit and possession of firearms did not violate the family obligations and therefore the termination of her voucher was erroneous.

¶ 37    Plaintiff's procedural due process argument is premised on case law holding that an administrative agency cannot ignore its own rules once they have been established. See *Miles*, 2015 IL App (1st) 141292, ¶ 38 (and cases cited therein). Plaintiff argues that the CHA's own rules, as set forth in its administrative plan, provide that while hearsay evidence is admissible at informal hearings, "hearsay evidence alone cannot be used as the sole basis for the hearing officer's decision." CHA administrative plan, ch. 16-III.B, at 16-6. Plaintiff argues that she was denied

---

[2] The CHA counters that a different section of the HUD regulations, 24 C.F.R. § 5.100 (2013), as well as the CHA's administrative plan, incorporates "guests" in the definition of persons whose criminal activity may result in the termination of a voucher. We need not resolve the issue of whether a voucher may be terminated based on the criminal activity of a guest, as we are affirming the termination of plaintiff's voucher on a different ground, that Walker was an unauthorized occupant of the Kedvale unit in violation of the family obligations.

procedural due process when the hearing officer disregarded the CHA's own rules and relied solely on the hearsay statements in the case incident report in finding that Walker was living in the Kedvale unit as an unauthorized occupant in violation of the family obligations when he was arrested on December 11, 2016, for unlawful possession of firearms.

¶ 38 The CHA responds that there was no procedural due process violation here because the hearing officer relied on evidence in addition to the case incident report when determining that Walker was an unauthorized occupant of the Kedvale unit at the time of his arrest. The CHA further contends that the issue of whether the hearing officer relied solely on the case incident report or whether she also relied on additional evidence is a factual question reviewed pursuant to the highly deferential "manifest weight of the evidence" standard.

¶ 39 We generally apply the manifest weight of the evidence standard when reviewing an agency's factual findings because having heard and seen all the evidence, the agency is in a better position than we are to observe the conduct and demeanor of the parties and witnesses and make credibility determinations. *Kelley v. Civil Service Comm'n*, 31 Ill. App. 2d 115, 117 (1961). However, plaintiff here does not contest the hearing officer's factual findings or credibility determinations; rather, her procedural due process argument centers on whether or not the hearing officer made the decision to terminate her voucher based solely on the hearsay statements contained in the case incident report regarding Walker's residence at the time of his arrest. Plaintiff contends that the hearing officer relied solely on the hearsay statements contained in the case incident report; the CHA counters that the hearing officer relied on evidence in addition to the case incident report. As our resolution of this issue does not, then, require us to reweigh any evidence or credibility determinations made by the hearing officer, we will conduct a *de novo* review of the record, and specifically of the November 26 judgment order, to inform us of the evidence which

the hearing officer relied on in making her decision. See *TCA International, Inc. v. B&B Custom Auto, Inc.*, 299 Ill. App. 3d 522, 528 (1998) (where no weighing of evidence or determinations of credibility are required, appellate review is *de novo*).

¶ 40    Our *de novo* review of the hearing officer's judgment order shows that she did not rely solely on the hearsay statements contained in the case incident report in determining that Walker was an unauthorized occupant of the Kedvale unit in violation of the family obligations when he was arrested for possession of firearms on December 11, 2016. First, the hearing officer considered plaintiff's application for continued eligibility, her out of household declaration, and the amendment to the HAP contract as establishing that Walker was no longer an authorized occupant of the Kedvale unit as of the date of his arrest on December 11, 2016. The hearing officer then considered the case incident report, which contained the hearsay statements identifying Walker's residence as the Kedvale unit and recounting the officers' execution of the search warrant there at 5:29 a.m. on December 11, 2016, and their detention of Walker and the discovery of his weapons, ammunition, and gun cleaning supplies hidden inside the unit. The hearing officer found that the case incident report was *one* piece of evidence indicating that Walker continued to occupy the unit on December 11, 2016, even though he was no longer authorized to do so.

¶ 41    However, in addition to the case incident report, the hearing officer also considered other corroborative evidence that, in fact, Walker continued to occupy the unit on December 11, 2016, even though he was not authorized to do so. Such corroborative evidence included: plaintiff's admission that Walker was present inside the unit on December 11, 2016, during the execution of the search warrant[3]; the certified statement of conviction in case number 17CR034801, which

---

[3] The hearing officer made credibility determinations regarding plaintiff's testimony, finding that her admission that Walker was inside the unit during the execution of the search warrant was credible but

showed that Walker pleaded guilty to an unlawful use of a weapon charge for possessing one of the types of weapons discovered in the Kedvale unit on December 11, 2016; and the CHA's entry in the Yardi database indicating that the CHA finally "removed Amos Walker from household" on December 14, 2016.[4] Plaintiff makes no argument on appeal that any of this corroborative evidence constituted hearsay or was otherwise inadmissible.

¶ 42    Accordingly, our *de novo* review of the judgment order shows that when concluding that Walker was an unauthorized occupant of the Kedvale unit on December 11, 2016, the hearing officer did not base her decision solely on the case incident report but also specifically considered several pieces of corroborative, non-hearsay evidence. Thus, the hearing officer did not disregard the rule set forth in the CHA administrative plan regarding how "hearsay evidence alone cannot be used as the sole basis" for the administrative decision. Therefore, plaintiff's procedural due process argument fails.

¶ 43    Plaintiff also argues that even if there was no procedural due process violation here, the case incident report should not have been admitted into evidence because the hearsay statements contained therein are unreliable due to the redaction of the reporting officers' identities, which prevented her from subpoenaing or examining the declarants to unearth any potential bias. Generally, we review an administrative agency's admission of evidence for abuse of discretion. *Cook County School District 130 v. Illinois Educational Labor Relations Board*, 2021 IL App (1st) 200909, ¶ 39. In the instant case, the hearing officer committed no abuse of discretion in admitting

---

that her testimony that she was unaware that Walker was inside the unit when she first came home and went to bed on December 11, 2016, was "convenient at best."

[4] Plaintiff argues in her reply brief that the Yardi log does not indicate when the CHA finally removed Walker from the household. We disagree, as the Yardi log entry for December 14, 2016, specifically states "Removed Amos Walker from household", thereby indicating that he was removed on that date.

the case incident report, as chapter 16-III.B of the CHA administrative plan, made pursuant to section 982.54(a) of the HUD regulations, expressly provides that "all evidence is admissible at an informal hearing [and] may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings." See CHA administrative plan, ch. 16-III.B, at 16-6. Chapter 16-III.B of the administrative plan further provides that "[h]earsay evidence will be admissible at informal hearings [but] hearsay evidence alone cannot be used as the sole basis for the hearing officer's decision." *Id.* In accordance with chapter 16-III.B, the hearing officer admitted the case incident report but did not use the hearsay statements contained therein as the sole basis for her decision; rather, she considered the case incident report in conjunction with the other corroborative evidence discussed earlier in this order. Accordingly, we find no abuse of discretion.

¶ 44    Plaintiff argues that *Miles v. Housing Authority of Cook County*, 2015 IL App (1st) 141292, compels a different result. In *Miles*, the petitioner was authorized to participate in the HCV program by the Housing Authority of Cook County (HACC). *Id.* ¶ 6. HACC's administrative plan provided that it "will terminate a family's assistance" if a household member engages in "violent criminal activity" during participation in the HCV program. *Id.* ¶ 5 (quoting HAAC administrative plan, § 12-I-E, at 218). Petitioner signed a document acknowledging her obligations under the HCV program and received a voucher from HACC for her residence at 1315 McDaniel Avenue in Evanston. *Id.* ¶ 6.

¶ 45    HACC subsequently sent petitioner a letter stating that it planned to terminate her benefits because it had received information that one of her family members, Lanord Miles, was involved in violent criminal activity. *Id.* ¶ 7. Petitioner requested an informal hearing. *Id.* At the informal hearing, HACC presented only hearsay evidence, specifically, an arrest report, an email chain, and

a document purporting to be a background check of Lanord to show that Lanord was a member of petitioner's household and was engaged in violent criminal activity. *Id.* ¶ 32.

¶ 46 The hearing officer found that HACC had proved its case by a preponderance of the evidence. *Id.* ¶ 16. On petitioner's petition for *certiorari*, the trial court reversed. *Id.* ¶ 19. We affirmed the trial court on two bases. First, we noted that HACC's administrative plan provided that while hearsay evidence is "generally admissible" at the informal hearing, hearsay "cannot be used as the sole basis for the hearing officer's decision." *Id.* ¶ 37 (quoting HAAC administrative plan, § 16-III.C, at 289.) HACC's decision, which rested solely on hearsay evidence, violated its own administrative plan, which in turn violated HUD regulations. *Id.* ¶ 38.

¶ 47 Second, we held that even if a housing voucher could be terminated exclusively based on hearsay evidence, we would find the hearsay evidence unreliable and not supportive of the termination decision because: the police report revealed limited details about Lanord's alleged criminal offense; the email chain disclosed no information about Lanord's alleged offense from which the hearing officer could determine whether he had committed violent criminal activity; and the background check simply showed that Lanord had been arrested and that his case was pending but contained no other information about the offense that would permit the hearing officer to determine whether it occurred. *Id.* ¶¶ 40-43. We further noted that another factor weighing against the reliability of these hearsay statements is that none of them were corroborated by other evidence. *Id.* ¶ 44.

¶ 48 In contrast to *Miles*, the hearing officer in the present case expressly recognized that the hearsay statements in the case incident report regarding Walker's occupancy of the Kedvale unit on December 11, 2016, were supported by several pieces of corroborative evidence, specifically: plaintiff's testimony regarding Walker's presence in the unit during the execution of the search

warrant; the certified statement of conviction in case number 17CR034801; and the CHA's December 14, 2016, entry in the Yardi database. Unlike *Miles*, where there was no evidence corroborating the reliability of the hearsay statements relied on by the hearing officer, the corroborative evidence here allowed for the admission and consideration of the case incident report under chapter 16-III.B of the CHA administrative plan. Accordingly, the hearing officer committed no abuse of discretion in the admission of the case incident report or in considering it along with the other corroborative evidence.

¶ 49    Plaintiff next argues that all the evidence considered by the hearing officer did not establish that on December 11, 2016, Walker was an "unauthorized occupant" of the Kedvale unit as defined in the CHA administrative plan. This issue involves a mixed question of law and fact. A mixed question of law and fact is one where the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard or whether the rule of law, as applied to the established facts, is violated. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001). A mixed question of law and fact is reviewed under the clearly erroneous standard. *Id.* at 392. An agency's decision is clearly erroneous only where, after reviewing the entire record, we are left with the definite and firm conviction that a mistake has been committed. *Id*. at 395.

¶ 50    The hearing officer's determination that Walker was an unauthorized occupant of the Kedvale unit on December 11, 2016, in violation of the CHA administrative plan was not clearly erroneous. Plaintiff's application for continued eligibility, her out of household declaration and the amendment to the HAP contract established that Walker was no longer authorized to reside in the Kedvale unit after September 2016, meaning that any of his future stays in the unit with plaintiff's consent would be as a guest. As a guest, Walker was required under the CHA administrative plan

to comply with its policy that his stays not exceed 30 days and nights in a calendar year, lest he be considered an unauthorized occupant subjecting the family to program termination. See CHA administrative plan, chapter 12-I.D at 12-2 to 12-3. However, the hearing officer found that the case incident report, which listed Walker's residence as the Kedvale unit on the date of his arrest on December 11, showed that plaintiff continued to allow Walker to reside in the unit for more than 30 days and nights even after he was no longer authorized to do so. The case incident report was corroborated by the certified statement of conviction, the CHA's December 14, 2016, entry in the Yardi database, and plaintiff's own testimony admitting that Walker was present in the unit during the execution of the search warrant. The hearing officer concluded from all this evidence that by exceeding the administrative plan's guest time-frame, Walker became an unauthorized occupant, thereby subjecting plaintiff to program termination. Considering all the evidence, we are not left with a definite and firm conviction that the hearing officer erred in so finding.

¶ 51     As we are affirming the hearing officer's decision terminating plaintiff's voucher based on Walker being an unauthorized occupant of the Kedvale unit on December 11, 2016, we need not address plaintiff's argument that the hearing officer erred in finding that the CHA could also terminate plaintiff's voucher even if Walker was just a guest, based on his criminal activity inside the unit.

¶ 52     For all the foregoing reasons, we affirm the circuit court.

¶ 53     Affirmed.